UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                 :

CONTINENTAL INDEMNITY COMPANY,   :
                                 :

               Plaintiff,       :

                                 :       20-CV-3479 (JMF)

        -v-                     :

                                 :      OPINION AND ORDER

BULSON MANAGEMENT, LLC and RI XIAN WANG, :
                                 :

               Defendants.     :

                                 :
------------------------------------------------------------------ X

JESSE M. FURMAN, United States District Judge:

        In this suit, Continental Indemnity Company ("Continental") brought claims against

Bulson Management LLC ("Bulson"), its insured, alleging fraud, breach of contract, and unjust

enrichment, and seeking a declaration that it was not required to defend or indemnify Bulson in

connection with a lawsuit pending in New York state court.  Bulson was served through the

Secretary of State with the initial complaint and by mail with an amended complaint, but failed

to appear.  Accordingly, on November 19, 2020, the Court entered a default judgment in

Continental's favor.  One day shy of a year later, Bulson filed a motion to vacate the default

judgment.  It argues, first, that the default judgment must be vacated because service of the

complaints was improper.  In the alternative, it contends that the default judgment should be

vacated because its default was not willful, it has meritorious defenses, and vacatur of the default

judgment would not prejudice Continental.  The Court concludes that Bulson was properly

served with the complaints and that it lacks any meritorious defenses.  Accordingly, and for the

reasons that follow, Bulson's motion to vacate the default judgment is DENIED.

**RELEVANT FACTS**

On July 19, 2016, Ri Xian Wang fell from a ladder while working at a construction site in Brooklyn, New York, that was managed by Bulson; the fall resulted in a serious spinal cord injury that left Wang's arms and legs paralyzed.  ECF No. 1 ("Compl."), ¶ 22.  Wang submitted a claim for workers' compensation benefits, asserting that he had been an employee of Bulson at the time of the accident.  *Id.* ¶ 23.  Prior to the accident, however, Bulson had not disclosed to Continental, its workers' compensation and employers' liability insurer, that Wang was its employee.  *Id*. ¶¶ 15, 24.  Upon receiving Wang's workers' compensation claim, Bulson told Continental that Wang had been an employee of Elite, a subcontractor that was not insured by Continental and, on that basis, Continental agreed to defend Bulson before the New York State Workers' Compensation Board (the "WCB").  *Id.* ¶ 25.  On November 14, 2017, however, the WCB found that Wang had, in fact, been a Bulson employee and ordered either Bulson or Continental to pay his workers' compensation benefits and Continental to pay his medical costs.  *Id*. ¶¶ 26-28.  Reserving its rights in full, Continental paid all of Wang's workers' compensation benefits and medical costs, a total of more than $1.1 million.  *Id.* ¶ 29.

In the meantime, on October 28, 2016, Wang sued the owners of the construction site (the "Owners") in New York state court.  *Id.* ¶ 32; *see also* ECF No. 70-11, ¶ 14.  In September 2017, the Owners filed a third-party complaint against Bulson, seeking contribution and indemnity.  Compl. ¶ 33; *see* ECF No. 70-13, ¶ 5.  On May 4, 2020, Continental filed this action against Bulson and Wang, alleging claims for breach of contract, fraud, and unjust enrichment, and seeking a declaratory judgment that it was not required to defend or indemnify Bulson in the state court action, all based on Bulson's alleged failure to disclose that Wang had been an employee.  The next day, the Court entered an Order directing Continental to amend its

Complaint (the "Original Complaint") to properly allege the citizenship of all parties, *see* ECF No. 9, which Continental did on May 14, 2020, ECF No. 11 ("Am. Compl."); jurisdictional allegations aside, the Original Complaint and the amended complaint (the "Amended Complaint") were identical.  In the interim, on May 7, 2020, Continental served the Original Complaint and summons on Bulson through the New York Secretary of State.  ECF No. 10.  On May 18, 2020, Continental filed a certificate of service stating that it had served the Amended Complaint on Bulson via first-class mail.  ECF No. 14.

Bulson failed to respond to either Complaint or otherwise appear in the case.  *See* ECF No. 15, at 1.  Accordingly, on June 26, 2020, the Court entered a default judgment scheduling order.  *See id.*  Among other things, the Court directed Continental to serve the scheduling Order on Continental by overnight courier.  *Id.*  Continental attempted to do so, but the courier advised that Bulson had vacated its office space.  *See* ECF No. 16, at 1.  On that basis, the Court granted Continental's request to waive the requirement that it serve Bulson with the scheduling Order and its motion for default judgment.  ECF No. 20.  The Clerk of Court entered a Certificate of Default as to Bulson on July 6, 2020, ECF No. 19, and Continental filed its motion for default judgment on August 10, 2020, ECF No. 39 ("Pl.'s DJ Mem.").  On November 19, 2020, after Continental voluntarily dismissed its claims against Wang and the Court denied a motion to intervene from third parties involved in a related case, *see* ECF Nos. 33-35, 51, 56, 58, the Court held a hearing on the motion for default judgment, *see* ECF No. 61.  Bulson did not appear, *see id.* at 2-3, and the Court granted Continental's motion for default judgment, finding that Continental did not owe Bulson a duty to defend or indemnify in the state-court action and that Bulson was liable to Continental for fraudulent inducement, fraud, breach of contract, and unjust

enrichment, in the amount of $1,664,084.18, including prejudgment interest, *see* ECF No. 60 ("Def. Judg.").

On November 18, 2021, one day before the deadline for motions brought pursuant to Rules 60(b)(1) and (6), *see* Fed. R. Civ. P. 60(c)(1), Bulson filed the present motion.  ECF No. 64.

## DISCUSSION

Bulson moves to vacate the default judgment on two grounds.  First, Bulson argues that the default judgment *must* be set aside because Bulson was not properly served with either the Original Complaint or the Amended Complaint.  *See* ECF No. 64-1 ("Def.'s Mem"), at 4-6. Second, Bulson argues that, even if service was proper, the default judgment *should* be set aside because its default was not willful, it has meritorious defenses, and Continental would not suffer prejudice.  *See id.* at 3-4, 6-14.  The Court will address each argument in turn.

**A.  Service Was Proper**

Bulson's first argument is that the default judgment must be set aside because it was not properly served with a summons and either Complaint.  Def.'s Mem. 4-6.  It is indeed well settled that "[a] court may not properly enter a default judgment unless it has jurisdiction over . . . the party against whom the judgment is sought, which . . . means that he must have been effectively served with process."  *Copelco Cap., Inc. v. Gen. Consul of Bol.*, 940 F. Supp. 93, 94 (S.D.N.Y. 1996) (internal quotation marks omitted).  Pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, the Court must therefore set aside a default judgment as void if the defendant was not properly served with process.  *See, e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011); *RDW Cap., Inc. v. BE Indus., Inc.*, No. 17-CV-

7195 (JPO), 2021 WL 3141939, at *1 (S.D.N.Y. July 26, 2021).  In this case, however, Bulson
was properly served.

First, it is beyond dispute that Continental properly served Bulson with the Original
Complaint by personally serving the New York State Secretary of State.  ECF No. 10; *see* Fed.
R. Civ. P. 4(h)(1)(B); N.Y. L.L.C. Law § 303; *Waterscape Resort LLC v. 70 W. 45th St. Holding
LLC*, No. 21-CV-7350 (PAE), 2022 WL 1558314, at *1 (S.D.N.Y. May 17, 2022).
Significantly, that is the case even though Bulson claims that it did not have actual notice of the
lawsuit because of its "inadvertent and unintentional failure to keep its current address on file
with the Secretary of State."  *Briggs Ave LLC v. Ins. Corp. of Hanover*, No. 05-CV-4212 (GEL),
2006 WL 1517606, at *5 (S.D.N.Y. May 30, 2006) (internal quotation marks omitted)
(collecting cases), *aff'd* 550 F.3d 246 (2d Cir. 2008); *accord Vega v. Trinity Realty Corp.*, No.
14-CV-7417 (RJS), 2021 WL 738693, at *2-6 (S.D.N.Y. Feb. 24, 2021).

Notably, Bulson does not seriously argue otherwise.  Instead, its primary argument is that
Continental's *Original* Complaint was "of no legal effect" once the Amended Complaint was
filed and that service of the *Amended* Complaint was improper under Rule 4 of the Federal Rules
of Civil Procedure.  *See* Def.'s Mem. 6 (internal quotation marks omitted); ECF No. 71 ("Def.'s
Reply"), at 1-3.  But that argument mistakenly assumes that service of the Amended Complaint
had to be made pursuant to Rule 4.  Rule 4 "contains the requirements to *initiate* an action
against a party, including the manner in which the party must be served."  *Reid v. Dan Yant, Inc.*,
No. 15-CV-2358 (MKB) (SJB), 2018 WL 8014197, at *1 (E.D.N.Y. Oct. 25, 2018) (emphasis
added).  By contrast, Rule 5 governs the manner in which parties not yet in default "shall be
served with all papers and pleadings subsequent to the service of the summons and the original
complaint . . . [and] directs the filing of those papers."  4B Wright & Miller, Federal Practice and

Procedure § 1141 (4th ed. 2022).  And Rule 5 is less strict than Rule 4 — on the theory that, once

a court has obtained personal jurisdiction over a defendant pursuant to service of process, it

"need not be obtained anew each time an amendment of the complaint is served."  *In re Orion*

*HealthCorp, Inc.*, No. 18-71748-67 (AST), 2022 WL 993850, at *7 (Bankr. E.D.N.Y. Apr. 1,

2022).  Most relevant here, Rule 5 provides that "a pleading filed after the original complaint"

may be served on a person "by mailing it to the person's last known address."  Fed. R. Civ. P.

5(a)(1)(B), (b)(2)(C).  That is precisely what happened here.  The Amended Complaint was

"filed after" the Original Complaint, Fed. R. Civ. P. 5(a)(1)(B), and Continental indisputably

mailed it to Bulson at the latter's "last known address," Fed. R. Civ. P. 5(b)(2)(C).  Per the plain

terms of Rule 5, service of the Amended Complaint was therefore proper as well.[1]

Admittedly, the Court's conclusion that service of the Amended Complaint on Bulson

was governed by Rule 5 rather than Rule 4 runs counter to the weight of authority, which

generally provides — as summarized by a leading treatise — that "[t]he service provisions of

---

[1]      If service of the Amended Complaint was improper, it does not necessarily follow that
Bulson would be entitled to relief.  In that event, the Original Complaint, which was indisputably
properly served, arguably would have remained the operative complaint.  *See Int'l Controls
Corp. v. Vesco*, 556 F.2d 665, 668-69 (2d Cir. 1977) (holding that an "original complaint is not
superseded until the amended complaint is served . . . , at least where . . . the amended complaint
is required to be served under Rule 5(a)"; *see also Perez v. Pino Grocery Corp.*, No. 17-CV-
2965 (RRM) (RLM), 2018 WL 4138935, at *3 (E.D.N.Y. Apr. 16, 2018) ("Since plaintiff [did
not properly] serve[] the Amended Complaint . . . , the Amended Complaint did not supersede
the original complaint, which remains the operative pleading."), *report and recommendation
adopted*, 2018 WL 4119236 (E.D.N.Y. Aug. 29, 2018); *Finkel v. Hall-Mark Elec. Supplies
Corp.*, No. 07-CV-2376 (NGG), 2009 WL 3401747, at *2-3 (E.D.N.Y. Oct. 21, 2009) ("[Where]
a plaintiff served a defendant with an original complaint before filing an amended pleading, the
original complaint is only superseded when the plaintiff serves the amended complaint, not when
the plaintiff files it.").  And while Continental moved for default judgment in connection with the
Amended Complaint, the only difference between the two pleadings was the additional of
jurisdictional allegations to the Amended Complaint to comply with the Court's Order.
*Compare* Compl. ¶¶ 11-13, *with* Am. Compl. ¶¶ 11-13.  In any event, the Court need not and
does not resolve these issues.

Rule 5 apply only to parties who have appeared.  Thus it is clear that amended or supplemental pleadings must be served on parties who have not yet appeared in the action in conformity with Rule 4."  4B Wright & Miller, Federal Practice & Procedure § 1146 (4th ed. 2022); *accord* 1 James Moore et al., Moore's Federal Practice – Civil § 5.03 (3d ed. 2022) ("The service provisions of Rule 5 apply only after a party has made an appearance in the proceeding.").[2]  But the cases on point mostly hale from other Circuits and none are binding on this Court.   And they fly in the face of the plain language of Rule 5, which explicitly governs service of "a pleading filed after the original complaint" and says nothing about appearance being a precondition to such service.  *See, e.g.*, *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540-41 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning.  As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." (internal quotation marks and citations omitted)); *accord Jenkins v. Gen. Motors Corp.*, 101 F.3d 1392, 1996 WL 408186, at \*2 (2d Cir. 1996) (summary order).  Nor do the cases even attempt to explain why they are reading into the Rule a requirement that does not exist.[3]  Accordingly, the

---

[2]    *See, e.g.*, *Fluor Eng'rs & Constructors, Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444, 449 n.7 (5th Cir. 1985); *Reid*, 2018 WL 8014197, at \*1; *Fontanez v. Hicks*, 20-CV-20286 (KSH) (CLW), 2021 WL 1608902, at \*4 (D.N.J. Apr. 23, 2021); *OneSouth Bank v. Titshaw*, No. 5:20-CV-379 (MTT), 2021 WL 639016, at \*2 (M.D. Ga. Feb. 18, 2021); *Justice v. PSI-Intertek*, 3:20-CV-3172-S-BN (DLH), 2021 WL 39587, at \*2 (N.D. Tex. Jan. 4, 2021); *Cunningham v. Upwell Health, LLC*, No. 4:19-CV-00894 (ALM) (CAN), 2020 WL 4342892, at \*1 (E.D. Tex. July 2, 2020), *report and recommendation adopted*, No. 4:19-CV-894, 2020 WL 4335998 (E.D. Tex. July 28, 2020); *Cryer v. UMass Med. Corr. Health*, No. 10-CV-11346 (PBS), 2011 WL 841248, at \*1-2 (D. Mass. Mar. 7, 2011); *Bricklayers & Allied Craftworkers Local Union No. 3 v. Palomino*, No. C-09-01589-CW (DMR), 2010 WL 2219595, at \*3 n.6 (N.D. Cal. June 2, 2010); *see also Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 995-96 (9th Cir. 2007) ("[A]n amended complaint can often be served in the same manner as any other pleading if the original complaint is properly served *and the defendants appeared in the first instance*." (emphasis added)).

[3]    It cannot be that appearance is a precondition for the exercise of jurisdiction over the defendant because the Rule provides that, once a party is in default for failing to appear, no service is required at all.  *See* Fed. R. Civ. P. 5(a)(2).  Notably, the only court to proffer any sort

Court declines to follow this authority and holds instead that service of the Amended Complaint on Bulson — even though it had not yet appeared (or defaulted) — was proper under Rule 5(b)(2)(C).

In short, whether the relevant pleading is the Original Complaint or the Amended Complaint, the Court concludes that service on Bulson was proper.  Accordingly, it is not entitled to vacatur of the default judgment under Rule 60(b)(4).

## B.  Default Judgment Should Not Be Set Aside

As noted, Bulson argues in the alternative that, pursuant to Rules 55(b) and 60(b), the default judgment should be vacated because its default was not willful, it has meritorious defenses, and Continental would not suffer prejudice.  A motion to vacate a default judgment on such grounds is "addressed to the sound discretion of the district court."  *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).  Although "[i]t is well established that default judgments are disfavored," *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001), "in the interest of the finality of judgments, a reversal of a default judgment is only appropriate in limited circumstances," *Aquapan v. Sunshine 39 Windows & Glass, Inc.*, No. 19-CV-06446 (DLI) (RML), 2022 WL 843731, at *1 (E.D.N.Y. Mar. 22, 2022); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  The Second Circuit has instructed that, in deciding whether to vacate a default judgment, a "court's determination must be guided by three principal

---

of explanation for conditioning Rule 5 service on appearance was the Fifth Circuit in *Fluor Engineers and Constructors*, but that case involved a cross-action that had been handed to counsel for a party that had been properly served with the underlying complaint and summons when that party had not yet appeared.  In that scenario, the court reasonably concluded that service was improper — because service on a litigant's attorney cannot be accomplished "until a litigant has appeared and established an attorney of record."  753 F.2d at 449 n.7.  To the extent that the court's language went beyond that scenario and read into Rule 5 a requirement that appearance is required in all cases, it did not justify its deviation from the plain language.

factors: (1) whether the default is willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). At the same time, the Circuit has made plain that the existence *vel non* of a meritorious defense is "key" and "the absence of such a defense is sufficient" in itself "to support . . . denial" of a motion to vacate. *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (internal quotation marks omitted); *accord State St. Bank*, 374 F.3d at 174; *Durso v. Mod. Food Ctr., Inc.*, No. 17-CV-7324 (LAK) (GWG), 2019 WL 2150424, at *13 (S.D.N.Y. May 17, 2019) (citing cases), *report and recommendation adopted* ECF No. 63 (June 10, 2019).

Here, the Court need not evaluate whether Bulson's default was willful or whether vacating the default would cause Continental prejudice because Bulson fails to demonstrate the existence of a meritorious defense to any of Continental's claims and that is sufficient to deny its motion. To demonstrate the existence of a meritorious defense, a defendant "need not establish [its] defense conclusively, but [it] must present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (internal quotation marks and citation omitted). Put differently, "[w]hether a defense is meritorious is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *State St. Bank*, 374 F.3d at 167 (internal quotation marks omitted). Measured against even that lenient standard, Bulson's proffered defenses fall short.

Bulson's primary argument — made with respect to Continental's declaratory judgment claim — is that, under New York law, Continental was not entitled to rescind its policy absent thirty days' notice. *See* Def.'s Mem. 8-11. That argument derives from *Cruz v. New Millennium*

*Const. & Restoration Corp.*, 17 A.D.3d 19 (3d Dep't 2005), in which the Appellate Division held that an insurance company could not declare a workers' compensation policy void *ab initio* based on a misrepresentation by the employer in its application for workers' compensation coverage.  That conclusion, the court reasoned, was mandated by the plain language of New York's Workers' Compensation Law § 54(5) and by public policy.  As to the latter, the court explained:

> [W]e find it difficult to reconcile the existence of a right to rescind a workers' compensation policy ab initio with the policy considerations underlying the compulsory workers' compensation statutory scheme, namely, to surely and swiftly compensate an injured employee or a dependent of a deceased employee. The serious potential adverse effects of retroactive cancellation on employees mandate exacting and strict compliance with the requirements for cancellation and termination under Workers' Compensation Law § 54(5), even when such termination is based on fraud perpetrated by the employer.

*Id.* at 23 (citations omitted); *see NorGuard Ins. Co. v. Lopez*, No. 15-CV-5032 (DRH) (AYS), 2017 WL 354209 (E.D.N.Y. Jan. 24, 2017) (following *Cruz*, because, *inter alia*, the Appellate Division, Third Department, although not New York's highest court, "is the court designated by the New York State legislature to review the [WCB's] decisions and therefore has developed specific expertise to deal with the issues presented in workers' compensation cases").

But *Cruz* and its progeny provide no aid to Bulson for two reasons.  First, Continental did not seek in its Complaints, and the Court did not grant in the default judgment, rescission of Bulson's policy altogether.  *See* Compl. ¶ 41; Am. Compl. ¶ 41; Def. Judg. ¶ 1.[4]  Second, Bulson did not seek in its motion for entry of default judgment, and the Court did not grant in the default judgment, relief at all with respect to the workers' compensation portion of the Continental

---

[4]     For that reason, Bulson's argument that "New York law requires a party seeking rescission of a contract to act without unreasonable delay upon learning of the grounds for rescission," Def.'s Mem. 11, also misses the mark.

policy.  Yes, Count I of the Amended Complaint also sought a declaratory judgment that Continental did not owe "insurance coverage for the workers' compensation benefits or medical costs paid by Continental in connection with the Accident."  Am. Compl. ¶ 41.  But, conceding that "that aspect of Count I implicate[d] rights that Wang may have," Continental was explicit in its motion that it did "not seek a default judgment against Bulson as to that issue."  Pl.'s DJ Mem. 11 n.2.  Instead, it sought relief only with respect to its duty to defend and indemnify Bulson in connection with the litigation pending in state court, pursuant to the employers' liability portion of the policy.  *See id.*  The default judgment was similarly limited: "Continental does not owe any duty to defend or indemnify Bulson in connection with the litigation pending against Bulson in the Supreme Court of New York, Kings County, Index No. 519101/2016." Def. Judg. ¶ 1.

This distinction makes all the difference.  Bulson identifies, and the Court has found, no New York statute that prohibits an insurer from denying coverage under an employer's liability policy based on a material misrepresentation.  And the public policy rationale for the holding in *Cruz* and its progeny — that an innocent employee, the ultimate beneficiary of worker's compensation insurance payments, should not be punished for the employer's malfeasance — does not apply to coverage under an employer's liability policy.[5]  Workers' compensation insurance provides protection to the employee, who is barred by law from suing his or her employer.  *See* 9A Steven Plitt et al., Couch on Insurance § 133:2-3 (3d ed. 2021).  By contrast,

---

[5]     To be sure, employer's liability insurance benefits not only the employer who procures it, but potentially the third party or parties to whom the employer is found liable.  But there are critical differences between such third parties and the employees who benefit from workers' compensation insurance.  They are not barred from suing anyone, as workers are, and they have no entitlement to such insurance coverage, as the law does not mandate it.  That is, such third parties always bear the risk that the employer at issue lacks insurance.

employer's liability insurance protects the employer itself.  Indeed, it would undermine, rather than promote, sound public policy to prohibit an insurer from denying coverage under an employer's liability policy based on the employer's malfeasance.

Bulson does not quarrel with these principles.  Instead, it asserts that the Court should treat the workers' compensation and employers' liability policies as a single policy subject to the holding in *Cruz*.  *See* Def.'s Reply 8.  But that assertion finds support in neither logic nor law. Indeed, New York courts regularly hold that, "[a]lthough Employers' Liability insurance is inextricably linked to Workers' Compensation coverage, coverage under the two parts may be evaluated separately."  *Am. Home Assurance Co. v. Highrise Const. Co.*, 111 A.D.3d 446, 447-48 (1st Dep't 2013) (internal quotation marks and citations omitted) (holding that the refusal of the WCB to consider proof of the cancellation of the workers' compensation policy was not *res judicata* as to the whether the employers' liability insurance policy had been cancelled); *see, e.g.*, *Preserver Ins. Co. v. Ryba*, 10 N.Y.3d 635, 640-41 (2008) (separately analyzing workers' compensation and employers' liability provisions in a workers' compensation and employers' liability insurance policy); *West Bldg. Restoration Co. v. Lovell Safety Mgmt. Co., LLC*, 61 A.D.3d 1095, 1101 (3d Dep't 2009) (analyzing the "employers' liability coverage" portion of "a workers' compensation *and* employers' liability contract" separately from the "employers' liability coverage" portion); *Rosa v. 47 E. 34th Street (NY), L.P.*, 2019 WL 4237588, at *4 (Sup. Ct., Bronx Cnty. July 22, 2019) (holding that "although the workers' compensation issue is resolved, an issue of fact remains as to the employers' liability insurance; a jury must determine whether [the employer] effected a misrepresentation and thus a policy violation"); 68A N.Y. Jur. 2d Insurance § 621 (2d ed. 2022) ("Employers' Liability insurance is inextricably linked to Workers' Compensation coverage . . . .  However, as to certain issues, coverage under the two

parts may be evaluated separately."). *NorGuard Insurance Company*, 2017 WL 354209, the sole

case cited by Bulson in support of its assertion, *see* Def.'s Reply 8, does not hold otherwise. It

does not appear to have involved any dispute regarding the employers' liability portion of the

policy and, perhaps not surprisingly, includes no analysis of the distinction between workers'

compensation coverage and employers' liability coverage, let alone the significance of that

distinction with respect to the holding in *Cruz* and its progeny.

   In short, Bulson's defense to Continental's declaratory judgment claim fails as a matter of

law and, thus, does not rise to the level of "meritorious." The same is true for Bulson's proffered

defenses to Continental's claims of fraud, breach of contract and unjust enrichment, although

they can be addressed more briefly. Bulson does little more than lay out the elements of each

cause of action and conclusorily assert that Continental's allegations are "baseless," "bogus" and

"preposterous," Def.'s Mem. 11-13, but that does not suffice. Bulson also gets the burden of

proof at this stage backwards when it contends that Continental "has not offered one scintilla of

evidence that Bulson intentionally and knowledgeably made a false representation." ECF No.

64-2 ("Schacher Decl."), ¶ 40. For one thing, in granting default judgment to Continental, the

Court already concluded that the allegations in the Amended Complaint state valid claims. *See*

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to

entering default judgment, a district court is required to determine whether the plaintiff's

allegations establish the defendant's liability as a matter of law." (cleaned up)). For another,

having defaulted, it is *Bulson* that bears the "burden of offering evidence sufficient to establish a

complete defense." *Bricklayers & Allied Craftworkers*, 779 F.3d at 187; *see also Sony Corp. v.*

*Elm State Elecs., Inc.*, 800 F.2d 317, 320-21 (2d Cir. 1986) ("Although in an answer general

denials normally are enough to raise a meritorious defense, the moving party on a motion to

reopen a default must support its general denials with some underlying facts."). Bulson does not carry that burden. The only new evidence it submits is an affidavit from its current President, Graham Bruwer; the transcript of a deposition in a related matter; and the minutes from the WCB hearings. *See* ECF No. 64. But Bruwer's affidavit establishes only that Bulson did not receive actual notice of the Complaints, ECF No. 64-6, ¶¶ 7-9; that Continental never notified Bulson that it was cancelling its policy, *id*. ¶ 10; that Bulson did not start Elite Drywall to avoid insurance reporting requirements, *id*. ¶ 12; and that there is no provision in the insurance policy that specifically explains that failing to disclose payroll information would be fraudulent, *id*. ¶ 13. None of these facts are in dispute, let alone provide a defense to Continental's claims.

Bulson does make a few more specific arguments, but they too fall short. First, it contends that it has a meritorious defense to Continental's claims of fraud and fraudulent inducement because any misrepresentation that it may have made was not material. Materiality is indeed an element of these claims, *see Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006); *Ultra Dairy LLC v. Kondrat*, 514 F. Supp. 3d 452, 460 (N.D.N.Y), and "usually a jury question," *Lavinger v. Principal Mut. Life Ins. Co.*, No. 98-CV-664 (TPG), 2000 WL 124990, at *3 (S.D.N.Y. Feb. 2, 2000). But a court may decide the issue "as a matter of law where the evidence is clear and substantially uncontradicted," *id.*, and that is the case here. Under New York law, an insured's "misrepresentation is material" if the insurer would have declined to issue a policy had it known the true facts *or* "if the insurer would not have issued the policy at the same price." *282 Mountainview Drive LLC v. Norguard Ins. Co.*, No. 19-CV-2048 (CS), 2021 WL 3037450, at *8-9 (S.D.N.Y. July 14, 2021); *accord Mut. Ben. Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32-34 (2d Cir. 1988). And in connection with its motion for default judgment, Continental submitted: a declaration from its Secretary, who, upon "review of the

underwriting and claim files maintained by Continental with respect to Bulson," determined that, "[i]f Wang had been disclosed to Continental prior to issuance of the Policy, Continental would have charged Bulson $3,846.22 in additional premium," ECF No. 41, ¶¶ 2, 12; a copy of the insurance policy, which indicated how the premium due from Bulson "was to be calculated based on the payroll information provided by Bulson and the statutorily-approved insurance rates applicable to the classes of works that Bulson employed," ECF No. 41, ¶ 4; *see* ECF No. 41-1, at 24-25; and Continental's underwriting guidelines at the time the policy was issued, *see* ECF No. 41-2. These documents confirm that Bulson's misrepresentations about Wang's employment were material as a matter of law. *See, e.g.*, *Principal Life Ins. Co. v. Locker Grp.*, 869 F. Supp. 2d 359, 364 (E.D.N.Y. 2012) ("The Court may determine materiality as a matter of law based on . . . such documents as the insurer's underwriting manuals and by testimony of a qualified employee of the insurer . . . ." (cleaned up)).

Finally, Bulson argues that Continental cannot establish breach of contract or fraud because "the subject policy's clear language allows for alternative ways to supplement for payroll records," allegedly making it "clear that Bulson's alleged withholding of Mr. Wang's payroll information . . . would not constitute a material breach of the subject policy/contract." Def.'s Mem. 12-13. But that argument does not withstand scrutiny. Bulson relies first on the fact that "the subject policy contemplates situations where if a worker is hired months after the policy's origination and payroll records are not available, that worker is still covered under the policy." Schacher Decl. ¶ 3.[6] But the fact that the policy reasonably provided for coverage of

---

[6]    As Continental correctly points out, *see* Pl.'s Opp'n 15 n.2, the Schacher Declaration, ECF No. 64-2, contains improper legal argument. Indeed, it contains a nine-page section titled "Legal Argument," *see id.* 9-18, that has no place in a factual declaration. The Court would be on firm ground disregarding the declaration for this reason, *see Avalos v. IAC/ Interactivecorp.*,

15

new workers hired after the fact is not relevant here, as it is undisputed that Wang "had been working for Bulson on various projects for more than two years" before the policy was issued. Compl. ¶ 26; *see* ECF No. 64-4, at 7-8 (Wang's testimony to the WCB, submitted by Bulson itself in connection with this motion, that he worked for Bulson for "[p]robably more than two years, less than three years"). Alternatively, Bulson contends that the policy "notes that '[i]f you do not have payroll records for these persons (workers), the contract price for their services and materials may be used as the premium.'" Schacher Decl. ¶ 34. But that is a mischaracterization of the relevant language, which provides as follows:

> Premium for each work classification is determined by multiplying a rate times a premium basis. This premium basis includes payroll and all other renumeration paid or payable during the policy period for the services of:
>
> 1. all your officers and employees engaged in work covered by the policy; and
>
> 2. all other persons engaged in work that could make us liable under Part One (Workers [sic] Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis.

ECF No. 41-1, at 24-25. Thus, the option to use something other than payroll records applies only to "other persons," not to "officers and employees." And, of course, the WCB found, after multiple days of hearings, that Wang was an employee of Bulson, ECF No. 64-5, at 22-23, a finding that is binding here, *see, e.g.*, *Heroux v. Ingrassio*, 612 F. Supp. 2d 236, 240 (W.D.N.Y. 2009). Accordingly, this provision too is irrelevant here.

In short, Bulson "proffers no facts that, if proved at trial" would constitute a complete defense to any of Continental's claims. *Badian v. Elliott*, 165 F. App'x 886, 892 (2d Cir. 2006)

---

No. 12-CV-8351 (JMF), 2014 WL 5493242, at *3 n.1 (S.D.N.Y. Oct. 30, 2014), but considering it does not change the Court's analysis or conclusions.

(summary order).  It would thus "be pointless to have this case proceed," *Durso*, 2019 WL 2150424, at *14, and the Court exercises its discretion to deny Bulson's motion to vacate.

## CONCLUSION

For the reasons stated above, Bulson's motion to vacate the default judgment is DENIED. The Clerk of Court is directed to terminate ECF No. 64.

SO ORDERED.

Dated:  May 31, 2022
         New York, New York

_____
JESSE M. FURMAN
United States District Judge